Eichardson, Ch. J.,
delivered the opinion of the court:
The Act of March 3, 1875, chapter 153 (Supp. Rev. Stat., p. 188), by a substitute for Eevised Statutes, § 1675, fixes the salaries of certain diplomatic officers as follows:
“ Sec. 1675. Ambassadors and envoys extraordinary and ministers plenipotentiary shall be entitled to compensation at the rates following, per annum, namely
“Those to France, Germany, Great Britain, and Eussia, each seventeen thousand five hundred dollars.
“Those to Austria, Brazil, China, Italy, Japan, Mexico, and Spain, each, twelve thousand dollars.
“ Those to all other countries, unless where a different compensation is prescribed by law, each, ten thousand dollars.
“And unless when otherwise provided by law, ministers resident and commissioners shall be entitled to compensation at the rate of seventy-five per centum, ehargé d’affaires at rate of fifty per cen-tum, and secretaries of legation at the rate fifteen per centum of the amounts allowed to ambassadors, envoys esetraordinaay, and ministers plenipotentiary to the said countries, respectively; except that the secretary of legation to Japan shall be entitled to compensation at the rate of twenty-five hundred dollars per annum.
“The second secretaries of the legations to France, Germany, and Great Britain shall be entitled to compensation at the rate of two thousand dollars per annum.”
This would make the salary of a minister resident at Portugal, while there were such an officer, not otherwise provided for, $7,500 a year. • The claimant seeks to recover a salary at that *405 rate for about one year, less that which has been paid to him at the rate of $5,000 a year.
In our opinion he never was minister resident to Portugal within the meaning and application of that section, and is not entitled to any salary therein provided for.
Most offices of the Government are established by general laws, except in the diplomatic service, and all salaries are fixed in like manner. In such cases a mere insufficient appropriation, without other indication of change of policy on the part of Congress, will not deprive the incumbent of the compensation established by general laws. (Langston’s Case, 21 C. Cls. R., 10, affirmed on appeal, 118 U. S. R., 389.)
But Congress has occasionally, especially in recent years, appropriated, in annual appropriation acts, salaries for officers which exist only as incident to the appropriations, and upon which the right of appointees, both to office and to salary, must stand.
. In the diplomatic service, Congress seems to have practically conceded, whether on constitutional grounds rightly or wrongly taken or otherwise, the duty, power, or right of the Executive to appoint diplomatic agents, of any rank or title, at any time and at any place, subject to such compensation, or none at all, as the legislative branch of the Government, should in its wisdom see fit to provide, as we pointed out in Byers’s Case (ante, 59), which, so far as applicable, we make part of our opinion in this case.
So the recent general laws relating to that service usually establish salaries but not offices, leaving the President to establish the offices or not, as he may determine, with the advice and consent of the Senate. (Rev. Stat., §§ 1674-1739.)
On the other hand, in such cases, the Executive usually, per-hai>s always, has been guided in appointments by the acts making specific appropriations, yielding to the apparent wishes of Congress thus indicated, and has made the appointments conform to the salaries provided for.
It is with such understanding of the course of legislation and the practice of the Executive branch of the Government that we must consider the claimant’s case and construe the several statutes which bear upon it.
At the time of the passage of the Bevised Statutes and the act of March 3,1875, enacting a substitute for section 1675, *406 quoted above, and until the passage of the act of 1876, there was a minister resident at Portugal, for whose office, though not specifically established by statute, Congress annually appropriated $7,500 (18 Stat. L., 66, 321), which was the established salary for such a.n office. By the diplomatic and consular appropriation act of that year Congress manifested a clear change of policy on the subject by omitting to appropriate the statute salary for a minister resident there, as well as at some other places, and by appropriating “ for salaries of chargés d’affaires to Denmark, Greece, Switzerland, Portugal, Paraguay, and Uruguay at $5,000 each.” (19 Stat. L., 170.)
The Executive immediately conformed to the wishes indicated by Congress, adopted its new policy, and appointed a chargé d’affaires to Portugal, superseding the minister resident, and that office, thus superseded or abolished by the power which had created it, ceased to exist.
This condition of affairs continued, and there was annually appropriated $5,000 for the salary of a chargé d’affaires until Congress manifested another change of policy by the act of July 1, 1882, chapter 262 (22 Stat. L., 126). By that act there was appropriated “ for minister resident and consul-general to Liberia and Hayti, Switzerland, Denmark, and Portugal, at $5,000 each.”
The Executive again conformed to the apparent wishes of Congress, adopted its latest policy, and appointed the claimant minister resident and consul-general to Portugal, where he was then holding the office of chargé d’affaires. He accepted the new appointment and gave bonds, and his former office ceased to exist.
It must not be overlooked that section 1675 of the Devised Statutes, as amended, upon which the claimant relies, does not fix the salary of a minister resident to Portugal or elsewdiere specifically.
Alter establishing the compensation of ambassadors and envoys extraordinary and ministers plenipotentiary to France, Germany, Great Britain, and other countries designated, that section fixes the salaries of “those to all other countries, unless where a different compensation is prescribed by law, each $10,000 a year. And, unless when otherwise provided by law, ministers resident and commissioners shall be entitled to compensation at the rate of 75 per cent, of the amounts allowed to *407 ambassadors, envoys extraordinary, and ministers plenipotentiary, to the said countries respectively.” Thus the authority to appoint either class of diplomatic officers to “all other countries” not named, was recognized and sanctioned, and their compensation' provided for.
But when Congress subsequently appropriated specifically for the salaries of diplomatic representatives to Portugal and other countries named, under the title, first, ofehargés d’affaires, and afterwards of ministers resident and consuls-general, instead of ministers resident whom the Executive had previously appointed, it was a clear indication of a change of policy, and of an intention to have those officers taken out of the benefits of the provisions of that section relating to “ all other countries.” (Mitchells Case, 109 U. S., 148.)
That change of policy was consummated when the Executive appointed anew officers of the style and title adopted in the act, and for whom, under that designation, the salaries were appropriated.
The case differs from that of Langston in this: Langston held a diplomatic office, for which the salary was specifically established by Bevised Statutes, section 1683, and which did not depend upon the general provision of section 1675. There had been no change indicated by Congress nor made by the Executive in its style, title, or character. It remained exactly as it was when the Bevised Statutes, section 1683, fixed the salary at $7,500.
On the part of the defendants it was not claimed that there was any change of policy indicated except what appeared from an insufficient appropriation, which of itself alone the Supreme Court decided does not repeal a permanent general law.
We have no doubt that the claimant in this case, having been paid at the rate of $5,000 a year for the time he was minister resident and consul-general at Portugal, has received all the compensation he is entitled to, and his petition is dismissed.
Nott, ,T. I am of the opinion that the claimant has not established a right, by either legislative action or Executive appointment, to a higher salary than that which he has received. His right to recover must depend upon one or the other ; and with neither existing, no liability is cast upon the United States, and no contract to pay the salary he seeks can be implied.
Davis, J., was not present at the trial of this case, and took no part in the decision.